# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

_____

No. 95-30670

_____

ORLEANS PARISH SCHOOL BOARD,

Plaintiff-Appellant,

versus

ASBESTOS CORP. LTD.; CELOTEX CORP; ASBESTOS
SPRAY CORP.; U.S. MINERAL PRODUCTS CO.; U.S.
GYPSUM CO.; UNIDENTIFIED PARTIES; STANDARD
INSULATIONS, INC.; SPRAY OF LAKE CO.; RUBEROID
CO.; RAYMARK IND., INC.; RAYBESTOS MANHATTAN;
PFIZER, INC.; OWENS CORNING; COLBERT LOWREY
HESS & BOUDREAUX, INC.; NICOLET IND. INC.;
NATIONAL GYPSUM COMPANY; LAKE ASBESTOS OF
QUEBEC CO.; KEENE CORP.; HEDRICK & HOOTEN,
INC.; H.K. PORTER CO., INC.; CAREY CAN MINES,
LTD.; GEORGIA-PACIFIC CORPORATION; G.A.F. CORP.;
FRERET & WOLF, INC.; FLINTKOTE CO.; FIBERGLASS
CORP.; FIBERBOARD CORP.; CURTIS, INC.; AUGUST
PEREZ & ASSOCIATES; EDWARD C. MATHES; HENRI
M. FAVROT; MATHES BERGMAN FAVROT & ASSOC-
IATES; FRERET AND WOLF ARCHITECTS; ALBERT J.
WOLF, JR.; JAMES P. OUBRE & ASSOCIATES; LEAKE
ASSOCIATE ARCHITECTS; HAROLD E. PIQUE; ROBERT
CUMMINS ASSOCIATE ARCHITECTS; MURVAN M. MAXWELL;
J. BUCHANAN BLITCH; BURK & LAMANTIA ARCHITECTS,
INC.; FAVROT, REED, MATHES & BERGMAN; ALBERT J.
SAPUTO; PARHAM & LABOUISSE; LOWREY, HESS, BOUDREAUX
ARCHITECTS; MAXWELL & LEBRETON; ANTHONY J. GENDUSA;
EDWARD MY TSOI; GRIMBALL, GRIMBALL, GORRONDONA,
KEARNEY & SAVOYE; LLOYD ROSEN; ROCK & GALLOWAY
ARCHITECTS; ERNEST E. VERGES & ASSOCIATES, INC.;
LAWRENCE & SAUNDERS; LEAKE FRERET & WOLF; HENRY G.
GRIMBALL; SPRAGUE & LAMP ASSOCIATES; THOMPSON B. BURK
& ASSOCIATES ARCHITECTS; ARMSTRONG WORLD INDUSTRIES,
FLOOR DIVISION, INCORPORATED; KENTILE FLOORS, INC.,

Defendants,

and

W. R. GRACE & CO.,

Defendant-Appellee.

Appeal from the United States District Court
For the Eastern District of Louisiana

May 22, 1997

Before POLITZ, Chief Judge, GOODWIN[*] and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

The Orleans Parish School Board (School Board) appeals an adverse summary judgment in its action to recover the costs of removing asbestos from school buildings. Concluding that the district court properly held that the School Board's claims against W.R. Grace & Co.-Conn. (Grace) had prescribed, we affirm.

## BACKGROUND

In the late 1970s and early 1980s, school boards across the nation learned of the potential dangers of asbestos, the possibility of its presence in school buildings, and the expense of its removal. Motivated by this knowledge, in 1983 the school boards filed a national class action against numerous asbestos manufacturers. In 1988 the School Board opted out of the class action and filed suit in Louisiana state court against the same asbestos manufacturers, including Grace.

The School Board's action was removed to federal court and Grace moved for summary judgment, contending that the claims were subject to a one-year liberative prescription which had accrued before the filing of the national class

[*]Circuit Judge of the Ninth Circuit, sitting by designation.

action.  The School Board countered by urging that its claims had not prescribed and, in the alternative, that La. R.S. 9:5644(c) revived otherwise prescribed claims against asbestos manufacturers.  The district court agreed with Grace, entered summary judgment dismissing the action, and the School Board timely appealed.

## ANALYSIS

We review a district court's entry of summary judgment *de novo* and apply the identical legal standards as the district court.[1]  The district court's entry of summary judgment will be deemed appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]

We sit herein as an *Erie* court and apply the substantive law of the state of Louisiana.[3]  The primary source of law in Louisiana is the Louisiana Civil Code; a secondary source is its jurisprudence.[4]  We therefore consider first the Civil Code and then the decisions of the Louisiana Supreme Court in our determination of the validity vel non of Grace's limitations claim, in civilian terminology cognomened prescription.

Article 3492 of the Civil Code provides the applicable prescriptive period for

---

[1]*Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773 (5th Cir. 1997).

[2]Fed.R.Civ.P. 56(c).

[3]*Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938).

[4]La. Civ. Code art. 1 and cmt.b.

3

the School Board's claims:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained....

Within the realm of delictual actions against asbestos manufacturers, the Louisiana Supreme Court recently dispositively decided the time of the commencement of accrual of this one-year prescriptive period.

In *Cameron Parish School Board v. Acands, Inc.*[5] the Cameron Parish School Board sued asbestos manufacturers to recover the costs of removing asbestos from its school buildings. One manufacturer filed a peremptory exception of prescription. Upon its review of the exception of prescription, Louisiana's highest state court noted that it is often difficult to identify the exact point in time that prescription begins to run. It held, however, that at the latest, prescription begins to run against a school board in a suit against an asbestos manufacturer when the school board becomes aware that asbestos is present in "at least some of its buildings" posing a health risk to employees, and that it must be removed at a considerable expense.[6]

Thus informed, we consider the timeliness of the instant claims. The School Board learned that it had asbestos in at least some school buildings in 1979 when, prompted by admonitions of the Environmental Protection Agency, it conducted a visual inspection of all of its school buildings, and collected 301 samples of

---

[5]687 So.2d 84 (La. 1997).

[6]*Id.* at 89.

building materials from six schools. It submitted 24 samples for laboratory testing which established the presence of asbestos in five of the schools.[7] Further, in a report entitled "Asbestos in New Orleans Public Schools A Status Report," the School Board reported that

> [a]ll schools, administrative buildings, and support service locations--136 structures--were inspected visually for presence of asbestos with the following results:
> 99 schools with some friable materials, some of which could be asbestos
> 20 locations with all asbestos-type material in good condition
> 17 sites with no asbestos-type material.[8]

In 1979 the School Board also learned of the potential health risks associated with asbestos. The EPA sent numerous documents detailing the dangers of asbestos to school boards across the nation. Of particular note, the School Board received a document entitled "School Asbestos Program Questions & Answers." In this document, the EPA explained that asbestos in school buildings was of great concern because "[e]xposure to asbestos fibers c[ould] cause debilitating or fatal diseases." The EPA also characterized asbestos as hazardous warning that

> [e]pidemiological studies of asbestos workers have shown that exposure to asbestos increases the risks of developing lung cancer, mesothelioma...and asbestosis....EPA believes that any exposure to asbestos involves some increase of risk. No safe level of exposure or "threshold" level has ever been established....

Finally, by 1980 the School Board knew that asbestos had to be removed

---

[7]The School Board tested the remainder of the 301 bulk samples in 1981 and 1982.

[8]This same information was contained in a report prepared by Dr. Samuel A. Scarnato, the Deputy Superintendent. The report was entitled "Asbestos In Schools," dated November 30, 1979, and distributed to both the Superintendent and the Members of the School Board.

from its school buildings and that the removal process was an expensive one. The 1979 status report explained that correction of the asbestos problem would begin after all of the bulk samples were tested. In addition, the report characterized the removal process as complex and necessarily expensive. In 1980 the School Board prepared an "Asbestos Survey and Estimate" which reflected that the cost of removing asbestos would be approximately $5,000,000. That same year, the School Board began to remove asbestos from its school buildings.

Although from the record we cannot pinpoint the exact day that prescription began to run against the School Board, it is not necessary that such be done.[9] The record reflects beyond peradventure that the School Board knew by sometime in 1980 that asbestos was a serious problem and that it necessitated an extensive and expensive removal process. The one year liberative prescription for delictual actions began to accrue against the School Board at that time. The School Board's claims were thus prescribed by the time the national class action lawsuit was filed in 1983.[10]

The School Board contends that even if its claims prescribed, they were revived by La. R.S. 9:5644(C).[11] We are not persuaded. This issue was decided

---

[9]*Cameron Parish.*

[10]The district court concluded that prescription began to run against the School Board in 1981. Even under this expansive reading of the facts, the School Board's claims were prescribed long before the filing of the national class action.

[11]La. R.S. 9:5644(C):
Any person who has an action to recover for asbestos abatement work under the provisions of this Section but whose action is barred by the prescriptive period provided in R.S. 9:5644 shall have one

conclusively in *Cameron Parish* in which the Louisiana court held that La. R.S. 9:5644(c) could not be retroactively applied to "claims as to which prescription has already accrued."[12]  We act herein as an *Erie* court and this decision is dispositive of the School Board's argument.  We therefore conclude and hold that the School Board's claims against Grace prescribed before the filing of any litigation which might have interrupted prescription and the claims were not revived by 9:5644(c), or any other statutory enactment.

The judgment appealed is AFFIRMED.

---

year from the effective date of this Act within which to bring an action or be forever barred.

[12]*Cameron Parish* at 92.