IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-31353

Summary Calendar

_____


SERGIO LANZAS

                                        Plaintiff - Appellant

        v.

THE AMERICAN TOBACCO COMPANY INC; ET AL

                                        Defendants

BROWN & WILLIAMSON TOBACCO CORPORATION; PHILIP MORRIS INC;
QUAGLINO TOBACCO AND CANDY COMPANY INC; IMPERIAL TRADING
COMPANY; GEORGE W GROETSCH INC; J & R VENDING SERVICE INC

                                        Defendants - Appellees

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 00-CV-2262

_____
August 2, 2002

Before KING, Chief Judge, and DAVIS and EMILIO M. GARZA, Circuit
Judges.

PER CURIAM:[*]

    Plaintiff-Appellee Sergio Lanzas appeals summary judgment in

favor of Defendants-Appellees based on the district court's

_____

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

determination that Lanzas's various state law claims, which arise from injury allegedly caused by Lanzas's smoking of tobacco cigarettes, are prescribed under Louisiana law.  For the following reasons, we AFFIRM.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff-Appellant Sergio Lanzas smoked tobacco cigarettes since 1955 until February of 1993.  On February 12, 1993, Lanzas was diagnosed with throat cancer and subsequently underwent a laryngectomy.  Lanzas has purchased no tobacco products since February 12, 1993.  When Lanzas was asked in his deposition whether he "knew that the smoking had caused the throat cancer," Lanzas responded that his diagnosing doctor told him, "You got bad cancer.  It's coming from the cigarette, from your smoking."

A class action, Scott v. Am. Tobacco Co., Inc., was filed in 1996 in Louisiana state court against various tobacco defendants, alleging damages based on tobacco companies' fraudulent concealment regarding the nicotine content of their products.  Lanzas was a member of that class until he opted out on June 12, 2000.  On July 12, 2000, Lanzas filed the instant individual action in Louisiana state court against several out-of-state manufacturers of tobacco products (the "Manufacturer Defendants") and several in-state distributors of tobacco products (the "Distributor Defendants") (collectively, the "Defendants").[2]

---

[2]  The original defendants included, inter alia, The American Tobacco Company, Inc.; Brown & Williamson Tobacco Corp.;

Lanzas alleged state law claims for redhibition, breach of implied and express warranties, fraud, negligent misrepresentation, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and a claim under the Louisiana Products Liability Act, LA. REV. STAT. ANN. § 9:2800.51 et seq. (West 1997). On August 1, 2000, the Defendants removed the action to federal district court on the ground of diversity of citizenship. Lanzas moved for remand of his claims to state court on the ground that his redhibition claim destroyed diversity. On May 3, 2001, the district court denied the motion to remand, also finding that all of Lanzas's state law claims are prescribed under Louisiana law. In light of that finding, the Defendants moved for summary judgment on the ground that Lanzas's state law claims are prescribed.[3] On October 11, 2001, the district court granted summary judgment in favor of the Defendants on the ground that all of Lanzas's claims are prescribed. Lanzas timely appeals that summary judgment.

## II. STANDARD OF REVIEW

---

Philip Morris Inc.; Quaglino Tobacco and Candy Company, Inc.; Imperial Trading Company, Inc.; George W. Groetsch, Inc.; and J & R Vending Service, Inc.

[3] The American Tobacco Company, Inc. did not join the motion for summary judgment and is not party to this appeal. The term "Defendants" used henceforth in this opinion thus refers to the defendants-appellees.

3

We review a district court's summary judgment de novo, applying the same standards as the district court.  <u>Chaney v. New Orleans Pub. Facility Mgmt., Inc.</u>, 179 F.3d 164, 167 (5th Cir. 1999).  Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).

### III.  DISCUSSION

The district court correctly determined that the law of the Louisiana forum regarding prescriptive periods governs this diversity action.  <u>See</u> <u>Orleans Parish Sch. Bd. v. Asbestos Corp. Ltd.</u>, 114 F.3d 66, 68 (5th Cir. 1997) (applying the prescriptive period of the forum state in a diversity action).  <u>See</u> <u>also</u> <u>Taylor v. Liberty Mut. Ins. Co.</u>, 579 So.2d 443, 446-47 (La. 1991) (recognizing that courts applying Louisiana law ordinarily apply the prescriptive period of the forum, especially when that forum's substantive law governs the case).[4]  The district court also correctly determined that all of Lanzas's claims are subject to a one-year prescription period under Louisiana law.  Lanzas's delictual claims for fraud, negligent misrepresentation, negligent infliction of emotional distress, intentional infliction of emotional distress, as well as the products liability claim, are subject to a one-year prescriptive period that begins to run from the date of injury.  <u>See</u> LA. CIV. CODE

---

[4]  Lanzas does not dispute that Louisiana law regarding prescription governs his claims.

ANN. art. 3492 (West 1994). The district court correctly determined that pursuant to the applicable prescriptive statute, former LA. CIV. CODE art. 2546 (West 1994), Lanzas's claims for redhibition and breach of implied and express warranties are also subject to a one-year prescription period. See Austin v. N. Am. Forest Prods., 656 F.2d 1076, 1083 (5th Cir. Unit A Sept. 1981) (recognizing that breach of warranty claims under Louisiana law are considered redhibitory in nature and thus subject to the redhibitory prescriptive period) (citing Cotton States Chem. Co. v. Larrison Enter., Inc., 342 So.2d 573 (La. Ct. App. 1961)).[5] Under Louisiana law, the prescriptive period applicable to Lanzas's redhibition and breach of warranty claims ran for one year from the date Lanzas discovered the defect because Lanzas alleges that the seller had knowledge of the product defect. See id. at 1084 (discussing article 2546).[6]

---

[5] Former article 2546 was amended, effective January 1, 1995, to provide for a longer ten-year prescriptive period applicable to claims based on redhibition. See Grenier v. Med. Eng'g Corp., 243 F.3d 200, 206 (5th Cir. 2001) (citing LA. CIV. CODE art. 2534, 3499). Lanzas does not argue that the longer post-1995 prescriptive period applies to his claims.

[6] In the alternative, the applicable prescriptive period begins to run from the date of sale -- February 12, 1993 at the latest in this case -- if the seller does not in bad faith know of the defect. See, e.g., Manning v. Scott-Hixson-Hopkins, Inc., 605 So.2d 233, 235 (La. Ct. App. 1992). There is a conclusive presumption that a manufacturer knows of a defect, however. See Austin, 656 F.2d at 1084. We find that Lanzas's claims based on redhibition are prescribed even if we apply a prescriptive period that begins to run from the date of discovery of the defect. Thus, we find it unnecessary to address the Distributor Defendants' separate argument that as to them, as non-

Lanzas argues that the district court incorrectly found that the doctrine of <u>contra</u> <u>non</u> <u>valentem</u> and the filing of the <u>Scott</u> class action failed to prevent prescription of Lanzas's claims. Under Louisiana law, the doctrine of <u>contra</u> <u>non</u> <u>valentem</u> may prevent the ordinary running of a prescriptive period in four categories of circumstance: (1) where some legal cause prevented the courts from "taking cognizance or acting on the plaintiff's actions;" (2) where some condition "coupled with the contract or connected with the proceedings" prevented a creditor from bringing suit; (3) where a debtor has done some act to prevent a creditor from availing himself of his cause of action; or (4) where "the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." See <u>Corsey v. State Dep't of Corr.</u>, 375 So.2d 1319, 1321-22 (La. 1979) (noting that the fourth exception to prescription will not apply if the plaintiff's "ignorance is attributable to his own willfulness or neglect; that is a plaintiff will be deemed to know what he could by reasonable diligence have learned") (citations omitted). Lanzas argues that the district court should have found that his claims are timely-filed either because his claims were not discoverable earlier or

_____

manufacturers not subject to a presumption that they knew of the defect at the time of sale, the prescription period for Lanzas's claims based on redhibition should begin to run from the last possible date of sale of tobacco products to Lanzas, February 12, 1993.

6

because some legal cause prevented him from filing his individual claims.

It is undisputed that Lanzas stopped purchasing cigarettes by February of 1993 -- the time at which Lanzas was diagnosed with cancer and expressly told by his diagnosing doctor that the cancer was due to his smoking of tobacco cigarettes. Such facts suggest that the prescription period as to Lanzas's claims began to run in February of 1993 and that his claims were prescribed one year later in February of 1994. Nevertheless, the district court credited Lanzas's allegation in his complaint, expressly made based on contra non valentem, that due to concealment practices by tobacco companies, Lanzas was unaware that he had a cause of action until shortly before the filing of the class action, Castano v. Am. Tobacco Co., Inc., on March 29, 1994 -- a national class action filed on behalf of all nicotine-dependent smokers.[7] Lanzas alleged in his complaint that, because he was not aware until shortly before the filing of Castano in March of 1994 that cigarettes were highly addictive, then the one-year

---

[7] Castano was filed on behalf of all nicotine-dependent persons that purchased and smoked cigarettes and their families against tobacco companies, including several of the instant Manufacturer Defendants. See 84 F.3d 734, 737 & n.3 (5th Cir. 1996). The Castano plaintiffs alleged the same nine causes of action as those alleged here by Lanzas, including fraud, negligent misrepresentation, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of express and implied warranties, a products liability claim, and redhibition pursuant to the Louisiana Civil Code. See id. & n.4.

7

prescription period could not begin to run until that date at the earliest. Accepting Lanzas's assertion, the district court found that the prescriptive period first began to run in March 1994. The district court correctly determined, however, even assuming under the doctrine of <u>contra</u> <u>non</u> <u>valentem</u> that prescription was tolled until March 1994, Lanzas still failed to file the instant action in timely fashion.[8]

Based on that March 29, 1994 date, Lanzas's claims would prescribe after March 29, 1995. However, the district court also applied the rule that the filing of a class action tolls the prescriptive period for the filing of an individual claim by a class member until class certification is denied. <u>See</u> <u>Crown, Cork & Seal Co., Inc. v. Parker</u>, 462 U.S. 345, 348-54 (1983) (extending an earlier decision by the Court, in <u>Am. Pipe & Constr. Co. v. Utah</u>, 414 U.S. 538 (1974), to hold that the filing of a class action may toll the statute of limitations as to individual claims later filed by putative class members). The district court thus found that Lanzas's claims were tolled until May 23, 1996, when this court decertified <u>Castano</u>, <u>see</u> 84 F.3d

---

[8] Like the district court, because we find Lanzas's claims prescribed based on periods that began to run even after the date Lanzas stopped smoking in February of 1993, we find it unnecessary to address the Defendants' contention that the prescription period as to some of Lanzas's claims began to run even earlier because of evidence that Lanzas was aware of the dangers of smoking much earlier than the date he was diagnosed with cancer.

734, 751 (5th Cir. 1996).  The district court then found that the one-year prescription period resumed running against Lanzas on that date in May 1996, so that Lanzas should have filed the instant individual action by May 23, 1997.

The district court then determined that our rule, announced in Salazar-Calderon v. Presidio Valley Farmers Ass'n, mandated rejection of Lanzas's contention that the filing of Scott in 1996 -- another class action in which Lanzas was a class member until he opted out on June 12, 2000[9] -- could toll the running of the prescription period as to his individual claims for a second time.[10]  See Salazar-Calderon, 765 F.2d 1334, 1351 (5th Cir.

---

[9]   Scott was filed in Louisiana state court against various tobacco manufacturers, including several of the Manufacturer Defendants, on behalf of all Louisiana residents who were smokers before May 24, 1996, including Lanzas.  The exact date of the filing of the complaint is not clear from the record, but apparently was some time after May 24, 1996.  The Scott plaintiffs alleged, similarly to the Castano plaintiffs and Lanzas, "essentially" that "defendants manufactured, promoted and sold cigarettes to them while fraudulently concealing and denying that the cigarettes contained the drug nicotine."  See Scott v. Am. Tobacco Co., Inc., 01-2498 (La. 9/25/01), 795 So.2d 1176, 1179.

[10]   In none of Lanzas's filings made subsequent to his original complaint, including his brief on appeal, does he again refer to Castano or argue that his claims were tolled based on his ignorance ending with the March 1994 filing of that action. Rather, Lanzas asserts in his pleadings filed subsequent to his complaint, and in his brief on appeal, only that he was ignorant that he had any claim until he spoke with attorneys prior to the filing of Scott in 1996.  The district court, however, correctly considered all of the pleadings on file in making its summary judgment determination, including Lanzas's own assertions in his complaint.  See FED. R. CIV. PROC. 56(c).
In order for this court to find in favor of Lanzas that Scott alone tolled the prescription period until he opted out of

that class, this court would need to (1) ignore Lanzas's assertion that Castano made him aware that he had a claim, (2) then apply the doctrine of contra non valentem to find that the prescriptive period did not first begin to run until 1996 when Lanzas spoke to attorneys involved in Scott, and (3) finally apply the Crown class tolling rule to find that Lanzas's claims were tolled only by Scott until he opted out of that class in June of 2000. We decline to do so. Viewing the record on appeal as a whole indicates that Lanzas fails to present evidence that he was unaware that he had a claim until he spoke with attorneys involved in the Scott case as late as 1996, especially in light of Lanzas's own assertion in his complaint that he was made aware that he had claims related to smoking by the March 1994 filing of Castano. Indeed, Castano involved identical claims as those made by Lanzas and included several of the same defendants as those in the instant case. We see no error in the district court's crediting Lanzas's own assertion in his complaint that he was made aware that he had a claim by the 1994 filing of Castano.

The record does not clearly establish Lanzas's relationship to the Castano action, and thus it is unclear whether application of the class action tolling rule based on Castano was necessary. American Pipe counsels that the class action tolling rule applies to "all asserted members of the class who would have been parties had the suit been permitted to continue as a class action," 414 U.S. at 554, thus Castano appears to have included Lanzas for the purpose of applying the class action tolling rule because he claims to have been a nicotine-dependent smoker during the relevant time period. This issue is ultimately of no consequence to our determination that the district court did not err in finding Lanzas's claims prescribed, however. Because we find that Lanzas fails to present evidence that he was unaware he had a claim until the 1996 filing of Scott, his claims are prescribed regardless of the district court's application of the class action tolling rule based on Castano and then our Salazar-Calderon rule against successive class action tolling. Even assuming that the filing of Castano did not first toll Lanzas's claims but only marked the date from which prescription began to run pursuant to contra non valentem, Lanzas's claims would have prescribed by March of 1995 at the latest -- one year after the March 1994 latest possible date that prescription first began to run against Lanzas. The filing of a class action will not revive a prescription period that has already run its course, however. See, e.g., Orleans Parish, 114 F.3d at 69. Thus, the filing of Scott in 1996 after the prescription period had already run in March 1995 had no effect on prescription of Lanzas's claims in this case, notwithstanding any application by the district court of the class action tolling rule based on Castano and then the

10

1985) (applying a no-"piggyback" rule that precludes class members from availing themselves of the Crown rule to file successive class actions involving members of the same putative class to "toll the statute of limitations indefinitely" for the purpose of later filing individual claims and indicating that "it has repeatedly been noted that the tolling rule [in the context of class actions] is a generous one, inviting abuse," and that "to construe the rule" to allow for successive class action tolling "presents just such dangers") (internal quotation and citations omitted).  See also Catholic Soc. Servs., Inc. v. I.N.S., 182 F.3d 1053, 1060 (9th Cir. 1999) (noting that tolling for successive class actions would "allow parties to bring a potentially endless succession of class actions" that would "frustrate the principle purposes of the class-action procedure -- promotion of efficiency and economy of litigation") (internal quotation and citations omitted); Korwek v. Hunt, 827 F.2d 874, 878 (2d Cir. 1987) (acknowledging the Salazar-Calderon rule).  The district court correctly determined, therefore, that the filing of Scott cannot interrupt prescription of Lanzas's claims for a second time after the first interruption in March of 1994, which was ended by our decertification of the Castano class in May of 1996.  Thus, the district court also correctly determined that because Lanzas did not file the instant action until July

rule against successive class action tolling.

11

12, 2000, approximately four years later, his claims are prescribed.  Therefore summary judgment in favor of the Defendants is appropriate.[11]

## IV.  CONCLUSION

For the foregoing reasons, the district court's summary judgment in favor of the Defendants is AFFIRMED.

---

[11]  Lanzas makes one further convoluted argument that a "Master Settlement Agreement" executed November 23, 1998 between multiple states, including Louisiana, and some tobacco entities, and which sets forth certain procedures that tobacco companies must undertake with respect to tobacco product manufacturing and marketing, indicates some form of acknowledgment by the Defendants of Lanzas's rights that would toll prescription of Lanzas's claims for the twenty-five year duration of that settlement, pursuant to LA CIV. CODE art. 3464 (West 1994). Article 3464 provides that "[p]rescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe."  We note that Lanzas raised this argument in his motion to the district court for remand of the action, but did not raise this argument before that court on summary judgment, so that Lanzas appears to have abandoned this argument for the purpose of this appeal.  The district court did not refer to or rule on this argument in its summary judgment order.

In any event, we find the argument unavailing.  The settlement agreement excerpt included in the record with Lanzas's remand filings does not include reference to any specific identifying action or the names of specific parties to it, and, contrary to Lanzas's assertion in his brief, it was executed in 1998, not 1996.  Lanzas provides no authority supporting his assertion that this settlement agreement, which was executed in a wholly unrelated action initiated by the states, and which does not indicate that it applies to any of the instant Defendants specifically, shows any acknowledgment of Lanzas's rights by the Defendants sufficient to toll prescription of his claims pursuant to article 3464.

12