United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 28, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-41225

TOMAS DURAN,

Plaintiff-Appellant,

v.

CITY OF CORPUS CHRISTI,

Defendant-Appellee.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
(2:04-CV-500)
--------------------

Before HIGGINBOTHAM, DAVIS, and WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Tomas Duran appeals from the district court's grant of summary

judgment for Defendant-Appellee the City of Corpus Christi ("the City"), dismissing Duran's

§ 1983 First Amendment retaliation claim. Concluding that Duran lacks standing to pursue

his asserted claim, we vacate the judgment of the district court and remand with instructions

to dismiss.

**I. FACTS & PROCEEDINGS**

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In 1998, Duran prepared and submitted to the City, on behalf of Entrust, Inc. ("Entrust"), a proposal to provide third-party claims administration and accounting services to the City in connection with its health insurance program. In January 1999, Entrust separately agreed to pay Duran half of all monthly administrative fees that it would receive if it should be awarded the health plan administration contract ("the Contract").[1] The letter from Entrust to Duran memorializing this agreement does not precisely identify the services that Duran had provided or would provide in exchange for his payments.

In February 1999, the City awarded Entrust the Contract, which, inter alia, required Entrust to appoint a local "coordinator to resolve all problems that may arise during the length of this Contract." Entrust selected Duran to serve as that coordinator.[2] He did so not as an employee of Entrust but as an independent contractor.

The instant case stems from a dispute between Entrust and the City over a costly health insurance claim made by an adult child ("the Child") of a City employee ("the Employee"). After Entrust learned of this claim, it relayed the information to Duran in his capacity as plan coordinator. Duran then informed various City officials of potential problems with the Child's claim. According to Duran, he communicated to those officials his belief that (1) the City should deny the Child's claim; (2) City officials had fraudulently manufactured COBRA eligibility for the Child in an attempt to secure reimbursement for her claim from the reinsurer; (3) the City did not have the authority to pay the Child's medical

---

[1] Entrust's eventual payments to Duran averaged $40,000 per month over the life of the Contract.

[2] Duran maintains that City officials "presumed" that he would serve as the local coordinator, and that the matter was "briefly discussed" during contract negotiations.

2

bills; and (4) making withdrawals from the City's self-insured fund to pay the Child's claim violated the terms of the health plan. Duran also contends that — without revealing any names of employees or plan participants — he prompted a confidential contact at a local newspaper, the Corpus Christi Caller Times, to look into the disputed claim. The Caller Times ran several articles exposing the dispute surrounding the Child's claim. Duran does not allege that any City official connected him to these articles or even suspected that he had leaked the information at any time pertinent to this case.

A few months before the Contract was to expire on its own terms, the City issued a Request for Proposals for health plans administration, health services network, pharmacy benefits management, and related services. As he had before, Duran prepared and submitted a proposal on behalf of Entrust. Several other companies, including the eventual successful bidder, Humana Insurance Company, Inc. (Humana), also submitted proposals. After a team of City officials and independent consultants evaluated all proposals submitted, the City awarded the new health plan administration contract to Humana as the bidder that received the highest ranking from the evaluation team.

Just over a year later, Duran filed the instant § 1983 action,[3] alleging, inter alia, that the City decided not to award the contract to Entrust in retaliation for his protected speech regarding the Child's disputed health care claim.

## II. ANALYSIS

---

[3] Duran initially asserted multiple claims against multiple defendants. The district court dismissed all of those claims pursuant to Fed. R. Civ. P. 12(b). Duran v. City of Corpus Christi, 2006 WL 1900636 (S.D. Tex. Jul 11, 2006). We affirmed the district court's dismissal of all but the instant First Amendment retaliation claim against the City. Duran v. City of Corpus Christi, 160 Fed. Appx. 363 (5th Cir. 2005).

3

**A.    Standard of Review**

We review grants of summary judgment <u>de novo</u>, applying the same standard as the district court.[4]  Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[5]

**B.    Standing**

The City did not challenge Duran's standing to assert a First Amendment retaliation claim based on the City's nonrenewal of the Entrust contract, either in the district court or on appeal.  Nevertheless, we must raise any perceived jurisdictional issue <u>sua</u> <u>sponte</u>.[6]  In preparing to hear this appeal, we perceived some question whether Duran's injury from Entrust's failure to be awarded the new contract was sufficiently "direct" to confer standing.  We instructed the parties to address this issue at oral argument, and having now considered the merits of their arguments and the applicable law, we conclude that Duran lacks standing to assert a First Amendment retaliation claim against the City.

**1.    Direct Standing**

Standing, at its "irreducible constitutional minimum," requires plaintiffs "to demonstrate: they have suffered an 'injury in fact'; the injury is 'fairly traceable' to the defendant's actions; and the injury will 'likely ... be redressed by a favorable decision.'"[7]

---

[4] <u>Abarca v. Metro. Transit Auth.</u>, 404 F.3d 938, 940 (5th Cir. 2005).

[5] <u>Dallas Fire Fighters Ass'n v. City of Dallas</u>, 150 F.3d 438, 440 (5th Cir. 1998).

[6] <u>See</u> <u>Henderson v. Stalder</u>, 287 F.3d 374, 379 n.5 (5th Cir. 2002).

[7] <u>Public Citizen, Inc. v. Bomer</u>, 274 F.3d 212, 217 (5th Cir. 2001) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555,

4

"[A]n injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[8]  Courts generally refuse to recognize standing based on economic harm that is merely a consequence of an injury suffered by another party.  For example, corporate shareholders, officers, and employees cannot pursue personal claims that are based on alleged misconduct towards the corporation unless they are able to show some "direct" harm to themselves.[9]

The Supreme Court has recognized the right of independent contractors to bring First Amendment retaliation claims based on a governmental entity's nonrenewal of an <u>at-will</u> contract <u>with that contractor</u>.[10]  In this case, however, only Entrust was an "independent contractor" of the City and the Contract was for a term that expired, not one terminable at

---

560-61 (1992)).

[8] <u>Lujan</u>, 504 U.S. at 560.

[9] <u>See</u> <u>Pagan v. Calderon</u>, 448 F.3d 16, 28-30 (1st Cir. 2006) (citations omitted); <u>see also</u> <u>Sw. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n</u>, 830 F.2d 1374 (7th Cir. 1987) (corporation's employees, officers, stockholders, and creditors had no injury distinct from corporation and lacked standing to maintain antitrust suit); <u>A-G-E Corp. v. United States</u>, 968 F.2d 650 (8th Cir. 1992) (employees lacked standing to seek to enjoin Department of Interior from permitting states to employ resident preferences in federally funded contracts); <u>Willis v. Lipton</u>, 947 F.2d 998, 1000-01 (1st Cir. 1991) (employee cannot assert RICO violation for corporate injury even though employee lost employment as a result of the conspiracy); <u>Warren v. Mfrs. Nat'l Bank</u>, 759 F.2d 542, 545 (6th Cir. 1985) (employee of corporation does not have standing to pursue fraud or RICO claim; lost employment was "merely incidental to the corporation's injury"); <u>Pitchford v. PEPI, Inc.</u>, 531 F.2d 92, 97 (3d Cir. 1975) (corporate president lacked standing to sue either in his capacity as a stockholder or as an officer because injuries were merely derivative of the company's injuries).

[10] <u>See</u> <u>Bd. of County Comm'rs v. Umbehr</u>, 518 U.S. 668, 684 (1996).

5

will. Duran had contracted separately with Entrust, not the City, to serve as the local health plan coordinator, a post that under the Contract Entrust was bound to fill. Thus his putative injury (potential loss of future fee payments from Entrust if the Contract had been renewed) is at best only derivative of Entrust's putative injury from nonrenewal of the Contract.

A similar situation was recently presented to the First Circuit in Pagan v. Calderon.[11] In Pagan, a pharmaceutical company (ARCAM), its chief executive officer (CEO), some minority shareholders, and a consultant with whom the company contracted, brought § 1983 actions against the former governor of Puerto Rico.[12] The plaintiffs alleged, inter alia, that the former governor violated the First Amendment's free association guarantee by improperly influencing a government lender to reject a loan sought by ARCAM.[13] The First Circuit held that none of the individual plaintiffs had standing to pursue such constitutional claims. Specifically, the court held that (1) the CEO's loss of income or employment was merely incidental to the direct injury inflicted on the corporation,[14] (2) the shareholders could not show that they suffered nonderivative injuries sufficient to deflect the rule that a shareholder may not sue in his own name for injury sustained by the corporation,[15] and (3) the independent consultant's alleged injuries were plainly derivative of the harm ascribed to ARCAM.[16]

---

[11] 448 F.3d 16 (1st Cir. 2006).

[12] Id. at 23.

[13] Id.

[14] Id. at 28 n.2.

[15] Id. at 28-29.

[16] Id. at 30.

6

Notably, the consultant in <u>Pagan</u> contended, exactly as Duran does here, that it was his protected conduct that precipitated the former governor's purportedly unconstitutional mistreatment of the corporation. The First Circuit regarded this contention as irrelevant, however, and held that "the standing inquiry turns on the plaintiff's injury, not the defendant's motive . . . [and] the fact that animus toward the agent sparked mistreatment of the principal does not create an exception to the rule that an agent's section 1983 claim can flourish only if he alleges that he personally suffered a direct, nonderivative injury."[17] The <u>Pagan</u> court held that "when a government actor discriminates against a corporation based on a protected trait of a corporate agent, it is the corporation — and only the corporation — that has standing to seek redress."[18] This reasoning, which we adopt, applies equally to bar Duran's standing.

Like the consultant in <u>Pagan</u>, Duran was not an employee of, or in contractual privity with, the allegedly retaliatory government actor, here the City. As such, Duran's injury (potential loss of his share of the future administrative fees that would have been paid to Entrust by the City if it had awarded the new Contract) was only a by-product of Entrust's failure to receive the contract renewal itself. Here, as in <u>Pagan</u>, "only the corporation . . . has standing to seek redress." Duran does not have direct standing to bring a First Amendment retaliation claim against the City based on its award of renewal to Humana and not to Entrust.

2.  **Third-Party Standing**

---

[17] <u>Id.</u>

[18] <u>Id.</u>

7

Duran also suggests that, even if he lacks direct standing, he has third-party standing to bring a First Amendment claim on behalf of Entrust. We disagree, even when we pretermit answering the obvious question whether Duran did indeed bring this claim "on behalf of Entrust."

In addition to the minimum constitutional requirements, the Supreme Court also has recognized prudential limitations on the set of persons who may invoke the federal judicial power.[19] These prudential considerations, which are self-imposed judicial limits on the exercise of federal jurisdiction, require that (1) a litigant generally assert his own and not another's interests; (2) the federal courts not adjudicate mere generalized grievances that are more appropriately addressed by the representative branches of government; and (3) the plaintiff's alleged injury arguably fall within the "zone of interests" protected by the law invoked.[20]

These prudential limitations are subject, however, to some narrow exceptions. For example, the Court has recognized the right of litigants to bring actions on behalf of third parties, provided that three important criteria are present: (1) The litigant must have suffered an "injury in fact," giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; (2) the litigant must have a close relationship to the third party; and (3) there must exist some hindrance to the third party's ability to protect his or her own interests.[21] Even if we assume that Duran meets the first two requirements, we can conceive of no

---

[19] Warth v. Seldin, 422 U.S. 490, 499 (1975).

[20] Allen v. Wright, 468 U.S. 737, 751 (1984); Warth, 422 U.S. at 499-500.

[21] See Powers v. Ohio, 499 U.S. 400, 411 (1991) (citations omitted).

8

meaningful hindrance (and Duran offers none) to Entrust's pursuit of its own claim against the City. Absent that, Duran does not have third-party standing to pursue a claim against the City on behalf of Entrust.

## C.     Ad Hominem

Even though our ruling on Duran's standing precludes our reaching the merits of his appeal, we pause to note that, even if we had found standing, we would have affirmed the district court's grant of summary judgment. The only instances of Duran's speech clearly supported by record evidence undisputedly occurred "pursuant to his official duties" as local plan coordinator under the Entrust contract and thus are categorically excluded from First Amendment protection under the Supreme Court's recent decision in Garcetti v. Ceballos.[22] Moreover, the record is devoid of any evidence that the City's decision not to renew the Entrust contract was made in retaliation for any conceivable public speech by Duran. Not only is the record devoid of probative evidence that he spoke to someone at the newspaper and thusly provoked its exposé, there is no record evidence that any one in authority at the City even knew of Duran's alleged contact with the newspaper. We are satisfied on this record that the process employed by the City to evaluate the competing bids for the renewal of its health care administration contract was objective, transparent, and conducted in full compliance with Texas law.

_____

[22] -- U.S. --, 126 S. Ct. 1951, 1960 (2006) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.") .

9

## III. CONCLUSION

For the foregoing reasons, Duran lacks standing to maintain this action under these circumstances. We therefore VACATE the district court's grant of summary judgment dismissing Duran's First Amendment retaliation claim against the City and REMAND this action with instructions to the district court to dismiss it.

VACATED and REMANDED with instructions to dismiss.