United States Court of Appeals
Fifth Circuit

**F I L E D**

September 30, 2003

Charles R. Fulbruge III
Clerk

**REVISED DECEMBER 15, 2003**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 02-20516

_____

FRANK, ET AL.,

                                                    Plaintiffs-Appellees,

VERSUS

XEROX,

                                                    Defendant-Appellant.

_____

No. 02-20416

_____

HORN, ET AL,

                                                    Plaintiffs-Appellees,

VERSUS

XEROX,

                                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before JONES and CLEMENT, Circuit Judges, and FELDMAN, District

Judge.[*]

FELDMAN, District Judge:

This appeal, which presents several issues, arises out of Appellants' fretful employment relationships with Xerox Corporation. The Appellants in these related cases filed several lawsuits against Xerox under Title VII and 42 U.S.C.§1981(2003), alleging that because they are black Xerox denied them promotions and pay increases and forced them to work in a racially hostile work environment. Xerox moved for summary judgment as to each Plaintiff. The district court granted those motions and denied Plaintiffs' motions for reconsideration. They appeal the district court's rulings. We reverse in part, affirm in part, and remand.

I.

Xerox, a well-known manufacturer and marketer of copying machines, is also a provider of facilities management services, called Xerox Business Services(XBS), to commercial customers throughout the United States. These management services include in-house copying, printing and mailroom services.

The focus of these lawsuits concerns Xerox's so-called

---

[*] District Judge for the Eastern District of Louisiana, sitting by designation.

Balanced Workforce Initiative(BWF).  Xerox implemented the program in the 1990's for the stated purpose of insuring that all racial and gender groups were proportionately represented at all levels of the company.  The BWF targets were established on an annual basis and were based on government labor force data. Throughout the time Xerox had the BWF in place, Xerox produced reports listing the actual and desired racial and gender compositions of each office.   These reports indicated to the company that blacks were over-represented and whites were under-represented in Xerox's Houston office in comparison to the local population.

In 1991, the general manager of the Houston XBS office, Doug Durham, directed that the Houston office create its own localized BWF reports to remedy the disproportionate racial representation. The reports set specific racial goals for each job and grade level and indicated whether there were any disproportionate representations.

Another one of Xerox's practices that is under attack in these employee disputes is Xerox's use of "Minority Roundtables." In 1997, to address the concerns of several of its black employees, Xerox decided to hold "Minority Roundtables" at its Houston office.  Xerox insists that at these meetings it tried to alleviate the misperceptions of the participants.  For example, many of the participants felt that Xerox discriminated against

3

black employees in hiring, promotions and compensation.  They also voiced concerns about the lack of any blacks on Durham's senior management team.

We turn now to the employees who sued.

II.

A.  Carol Frank

Carol Frank joined Xerox's Houston office in February 1985 as a Production Supervisor III.  During her employment at Xerox, Frank received several promotions and salary increases.  In September 1988, Frank was promoted to Supervisor II and she worked in that role until 1991, when she applied to become a Production Manager/Manager of Customer Operations(MCO).  Frank was not chosen for the position.  Xerox claimed that Frank was not qualified for the position and gave the job to Joe Olivarez, a Hispanic male.  Xerox stated that Olivarez was the most qualified candidate for the job.

In 1997 Frank applied for the Customer First Manager Position.  After interviewing the candidates, Durham decided not to fill the position because he believed none of the candidates was sufficiently qualified.  Frank asserts that she believed at

4

the time that she had been discriminated against because of her race. Frank also applied for another MCO position in December 1998. Again, Olivarez was chosen over her. Xerox reiterates that he was chosen because he was the most qualified candidate.

In March 1999 Frank claims she began to suffer from harassing and discriminatory treatment by her supervisor, Linda Carter. She claims Carter's conduct caused her to resign from her position. On March 29, 1999, Frank submitted a letter of resignation and gave two weeks' notice. Thereafter, she filed a discrimination charge with the Equal Employment Opportunity Commission(EEOC), alleging race, gender and disability discrimination. The EEOC found no cause of action and dismissed the charge on March 28, 2000.

B. <u>Henrietta Williams</u>

Henrietta Williams started working at Xerox in 1982 as a Production Operator II in the Houston office. During the first seven years of her employment, she received two grade level salary increases and was promoted to Training Administrator. Williams claims that after Doug Durham transferred to the Houston office from New York, she was forced out of her Training Administrator position and replaced by Sharon Talty, a white female, and she was demoted to Production Supervisor. Xerox responds that in 1998 Williams attempted to resign, but that

5

Durham and another manager persuaded her to stay. In 1999, Williams officially resigned. Williams asserts that she resigned because of the racially discriminatory working conditions, constant harassment, lack of employment opportunities and denial of pay raises. Xerox maintains that Williams never asserted discrimination or intolerable working conditions when she left, and that she had not actually applied for a promotion in her last three years at the company.

### C. Sibyl Arterberry

Sibyl Arterberry began her career at Xerox in 1991 as a Production Operator IV. By 1995 she had been promoted several times, and by 1997 she was a Lead Account Associate for one of Xerox's accounts. Arterberry claims that she was denied pay increases because of her race. Xerox asserts that she was not eligible for a pay increase in her Account Associate position because she had reached the highest grade level for her position. Xerox adds that it tried to transfer her into another position which would allow her to receive a higher salary, but she refused. Arterberry was later transferred to another account and did get a pay increase. Arterberry was still working for Xerox when the company was sued.

### D. Iris Debose

6

Iris Debose came to work at Xerox in 1985. For the first five years of her employment she worked as an Associate Customer Services Support Representative. After that time, her title was changed to Administrative Secretary, although she performed the same duties. Debose claims that she received outstanding reviews of her performance until 1991 when Doug Durham transferred to the Houston office. She says after his arrival, she was denied promotions to positions which were eventually given to white females with inferior qualifications. She also claims that she was harassed and denied promotions, equal pay and equal pay raises because she participated in the Minority Roundtables. Debose resigned from Xerox in 1999.

E. Cynthia Walker

Cynthia Walker was hired in September 1985 as a Production Operator in the Houston office. By 1990 she had received several promotions including a promotion to Customer Support Representative, a position she held until September 1997. From 1990 until 1997, Walker received annual merit increases and was promoted to higher pay grade levels. In addition, during that same time period, Walker applied for three different positions. Two of the positions had been eliminated before they were filled and the third position was not awarded to her, Xerox claimed, because she was not qualified. In 1997 Walker was transferred to

7

a Support Analyst position and received a five percent pay raise. In 1998 she was transferred to a lateral position. In April 2000, after several organizational changes at the Houston office, Walker resigned citing lack of opportunities. Apparently, she believed that she should have been offered positions that were given to two of her non-black co-workers.

F. Derrey Horn

Horn began work at Xerox in May 1984 as an entry level Production Operator IV. However, over the years Horn quickly moved up in the company. In 2002 Xerox received an anonymous complaint that some of the female employees had been sexually harassed by Horn. After an investigation, Xerox determined that the complaints were legitimate and terminated his employment. Horn did not file a discrimination charge with the EEOC. Instead, he joined in this lawsuit with the other five plaintiffs.

III.

We review summary judgment de novo. Walker v. Thompson, 214 F.3d 615, 624 (5th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

8

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." Allen v. Rapides Parish Sch.Bd., 204 F.3d 619, 621 (5th Cir. 2000)(internal quotations and citations omitted). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. See Burch v. City of Nacogdoches, 174 F.3d 615, 619 (5th Cir. 1999).

## A.   Disparate Impact Claims

Williams, Arterberry, Debose, Walker and Horn all asserted disparate impact claims against Xerox. The district court granted summary judgment in favor of Xerox on all of these issues.

To establish a disparate impact claim, the claimants must prove as part of their prima facie case that Xerox maintains a facially-neutral policy or practice that caused a disparate impact on its black employees. See 42 U.S.C. §2000e-2(k)(1)(A)(i)(2003); Gonzales v. City of New Braunfels, 176 F.3d 834, 839 n.26 (5th Cir. 1999). To do this, the claimants must engage in a "systematic

9

analysis" of the policy or practice.  <u>Munoz v. Orr</u>, 200 F.3d 291, 299(5th Cir. 1999).  In doing so, they "must, of necessity, rely heavily on statistical proof."  <u>Id</u>. at 300.

Appellants point to the BWF reports and to evidence of the statistical data that Durham used from 1994 to 1999 to reduce the percentage of black employees in Houston.  While Xerox asserts that the Plaintiffs' statistical evidence is inaccurate, incomplete and has not been analyzed, we find that the evidence creates a material issue of fact as to disparity and, therefore, summary judgment was inappropriate.

### B.  <u>Salary Disparity Claims</u>

Arterberry, Debose, Williams, Walker and Horn all asserted salary disparity claims against Xerox.  In reviewing the record, we find that the district court failed to address these claims. Thus, we remand this issue to the district court for further proceedings.

### C.  <u>Adverse Employment Action Claims</u>

Frank, Debose, Williams, Arterberry and Walker all asserted claims for several adverse employment actions that took place throughout the 1990s.  The district court found that most of these claims were time-barred.  Appellants assert that the

10

district court erred in determining that the claims were time-barred; they urge that the continuing violations doctrine applies to their claims.

### i. Timeliness of Claims

A claimant must file a Title VII discrimination claim with the EEOC within 300 days of the challenged discrimination. See 42 U.S.C. ~2000e-5(e)(1)(2003); Byers v. Dallas Morning News, 209 F.3d 419, 424 (5th Cir. 2000). Only two of the employees, Carol Frank and Cynthia Walker, filed discrimination charges with the EEOC. The others can only pursue Title VII claims if they can "piggyback" onto a timely filed claim by either Frank or Walker. See Allen v. United States Steel Co., 665 F.2d 689, 695 (5th Cir. 1982). Frank filed her claim on November 15, 1999, and Walker filed her claim on June 19, 2000. Thus, the district court correctly determined that the date for determining timeliness was 300 days prior to the filing of the first filed charge, or January 19, 1999. See Celestine v. Petroleos de Venezuela, S.A., 266 F.3d 343, 351 (5th Cir. 2001). Any bad conduct that occurred prior to that date would be time-barred. See id. Similarly, one must file a discrimination claim under §1981 within two years of the adverse employment action. See Byers, 209 F.3d at 424. This lawsuit was filed on June 29, 2000. Thus, claims for any adverse employment actions under §1981 that occurred prior to June 29, 1998 are time-barred.

11

ii.  <u>Continuing Violations Doctrine</u>

Appellants argue that the district court erred in finding that the continuing violations doctrine does not apply to their claims.  They say that the continuing violations doctrine applies because: 1) the various adverse employment actions constituted an organized scheme to discriminate rather than discrete occurrences; and 2)  that their claims show a "pattern-or-practice" of discrimination which allows them to be considered continuing violations.  We affirm the district court's ruling that the continuing violations doctrine does not apply here.

Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts.  <u>See</u> <u>Huckabay v. Moore</u>, 142 F.3d 233, 238-39 (5th Cir. 1998).  However, in <u>Huckabay</u>, we also confirmed the rule that discrete actions, such as those asserted by Appellants, are not entitled to the shelter of the continuing violation doctrine. <u>Id</u>. at 239-40.  Appellants complain of separate and varied acts and decisions that occurred at different times and discretely applied in different ways to different employees.  And, beyond speculation, we cannot say that the record confirms an organized or continuing effort to discriminate.  The pattern-or-practice argument also fails.  <u>See</u> <u>Celestine</u>, 266 F.3d at 355-56 (pattern-or-practice method of

12

proof not available in private, non-class action lawsuits).  In addition, one is expected to act as soon as the facts of discrimination are or should be apparent to a reasonably prudent person similarly situated.  See Messer v. Meno, 130 F.3d 130, 134-35(5th Cir. 1997).


D.   The Remaining Adverse Employment Action Claims

After correctly determining that most of Appellants' claims were time-barred and not saved by the continuing violation doctrine, the district court then dismissed their remaining claims for failure to satisfy their burden of proof in establishing discrimination. We reverse the district court on this issue.

In addressing the remaining claims, the district court applied the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817, 1824-26 (1973).  McDonnell Douglas instructs that the plaintiff must first establish a prima facie case of discrimination.  Id.  Once the plaintiff presents a prima facie case, the defendant must then articulate a legitimate, nondiscriminatory reason for the questioned employment action. Id. If the defendant is able to do so, the burden shifts back to the plaintiff to produce evidence that the defendant's articulated reason is merely a pretext for discrimination. Id.

To establish a prima facie case of discrimination, a plaintiff must show: (1)that she was a member of a protected class; (2) that

13

she was qualified for the position; (3) that she was discharged; and (4) after she was discharged, she was replaced with a person who is not a member of the protected class. <u>Bauer v. Albermarle Corp.</u>, 169 F.3d 962, 966 (5th Cir. 1999). Of course, the plaintiff may always present a prima facie case by providing direct evidence of discrimination. <u>Fierros v. Tex. Dep't of Health</u>, 274 F.3d 187, 191 (5th Cir.2001). We understand that when there is sufficient direct evidence of discriminatory motive, the <u>McDonnell Douglas</u> framework does not apply. <u>See</u>, e.g., <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989). And so, our court has earlier held that when "a plaintiff presents credible direct evidence that discriminatory animus in part motivated or was a substantial factor in the contested employment action, the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." <u>Brown v. E. Miss. Elec. Power Ass'n</u>, 989 F.2d 858, 861(5th Cir. 1993).

We find that the existence of the BWF program is sufficient to constitute direct evidence of a form or practice of discrimination. <u>See</u> <u>Bass v. Bd. of County Comm'rs, Orange County, Fla.</u>, 256 F.3d 1095, 1110 (11th Cir. 2001). "[T]he existence of an affirmative action plan," the Eleventh Circuit has written, "when combined with evidence that the plan was followed in an employment decision is sufficient to constitute direct evidence of the unlawful

14

discrimination unless the plan is valid." Id. at 1111; see Dallas Fire Fighters Ass'n v. City of Dallas, Tex., 150 F.3d 438, 440-42 (5th Cir. 1998) (discussing factors that weigh on the validity of affirmative action plans). See also Messer, 130 F.3d at 135-36. Here, in the BWF summary reports, Xerox candidly identified explicit racial goals for each job and grade level. The reports also stated that blacks were over-represented and whites were under-represented in almost every job and grade level at the Houston office. Senior staff notes and evaluations also indicate that managers were evaluated on how well they complied with the BWF objectives. A jury looking at these facts could find that Xerox considered race in fashioning its employment policies and that because Plaintiffs were black, their employment opportunities had been limited. Because the district court ignored the existence of the BWF program and applied the McDonnell Douglas standard when it analyzed Plaintiffs' non-time-barred claims,[1] we reverse the district court's dismissal of these claims.

### E.   Hostile Work Environment Claims

Debose, Williams, Arterberry and Walker also asserted claims for hostile work environment. We affirm the district court's grant

---

[1] The non-time-barred claims are the Title VII claims that occurred after January 19, 1999 and the §1981 claims that occurred after June 29, 1998.

of summary judgment in favor of Xerox as to these claims.  We find that no serious issues of material fact exist.

To prevail on a hostile work environment claim, the Plaintiffs must prove that: 1) they belong to a protected group; 2) they were subjected to unwelcome harassment; 3) the harassment complained of was based on race; and 4) the harassment affected a term, condition, or privilege of employment.  See Celestine, 266 F.3d at 353-54.  The Plaintiffs must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable.  Harris v. Forklift Sys., Inc., 114 S.Ct. 367 (1993).  The fact-finder must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance.  Walker v. Thompson, 214 F.3d at 625.  Here, the Appellants assert that the BWF target goals were so intimidating, severe and pervasive, that it was objectively reasonable for them and other black employees to believe that they were in a racially hostile work environment that precluded them from advancing to a higher level because of their race.

Xerox counters that the use of the BWF reports did not and could not objectively create a hostile work environment, and that Appellants have not presented any evidence of how the use of the reports actually affected them or any other employee.  Xerox adds that Appellants' subjective belief that the company intended to use

16

the BWF reports to avoid promoting and to terminate black employees is not objectively reasonable, and, therefore, they cannot satisfy the severe and pervasive requirements that are essential to prove a hostile work environment claim. We agree. Appellants have not provided any precedent in support of their argument that the implementation of an affirmative action plan equates to a hostile work environment. We also would note that the record reflects no evidence of severe or pervasive harassment.

## Conclusion

To sum up the foregoing discussion, the district court's grant of summary judgment on the disparate impact claims is reversed and remanded. The issue of salary disparity is remanded. The district court's grant of summary judgment on non-time-barred claims is reversed and remanded. The district court's ruling on timeliness and the continuing violations doctrine is affirmed. The district court's grant of summary judgment on the hostile work environment claims is affirmed.

This case in short, is AFFIRMED in Part, REVERSED in Part, and Remanded for proceedings consistent herewith.

17