United States Court of Appeals
Fifth Circuit

**F I L E D**

March 28, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 04-20397

ANTONIO ABARCA,

Plaintiff-Appellant,

VERSUS

METROPOLITAN TRANSIT AUTHORITY,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

Before REAVLEY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

PER CURIAM:

Appellant Antonio Abarca filed suit against Metropolitan Transit Authority ("Metro"), asserting, inter alia, that Metro violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, by: (1) treating Abarca differently than other non-Hispanic employees; (2) discharging Abarca in retaliation for complaints and grievances he had filed against Metro; and (3) refusing to reinstate Abarca to his previous position in accordance with the recommendation of the union grievance board. Metro moved for summary judgment, seeking dismissal of Abarca's Title VII

claims.  The district court granted Metro's motion and Abarca timely filed the instant appeal.

## BACKGROUND AND PROCEDURAL HISTORY

Abarca, an Hispanic male, began his employment with Metro in 1992.  In November 2000, Abarca was working at Metro's Kashmere facility in Houston.[1]  Abarca testified he had experienced no problems at the Kashmere facility until Victor Kizzine was assigned as Abarca's foreman in September 2001.  Abarca maintained that Kizzine, who is black, harassed Hispanic employees.  As a result of Kizzine's alleged discriminatory behavior, on June 21, 2002, Abarca filed a union grievance.

Approximately one month later, on July 22, 2002, Kizzine claimed he found Abarca sleeping on a bus that was parked at another Metro facility where Abarca was working temporarily as a floater.  Specifically, Kizzine stated in his deposition testimony that he observed Abarca, through the door of the bus, sleeping for several minutes before Kizzine then attempted to open the door.  Kizzine was unable to open the door, however, because the air pressure used to close the bus doors was engaged.  At this time Isaac Chalambaga, another Hispanic Metro employee, came from the back of the bus and opened the door.  Kizzine testified that Abarca

---

[1] Abarca was apparently transferred to the Kashmere facility after an altercation he had with a Metro supervisor at another facility location.  Although Abarca initially filed criminal assault charges against the supervisor, the charges were eventually dismissed.

then opened his eyes and stretched, as if he had been asleep. For his part, Abarca denies he was asleep on the bus, and Chalambaga testified that he and Abarca were awake at the time of the alleged incident, stating that they had pulled the bus into the paint booth only minutes before Kizzine arrived.

After reporting his observations to his supervisors at Metro, it was ultimately determined that Abarca was to be fired in accordance with Metro's employment policy.[2] Shortly thereafter, Abarca was notified that he was being discharged. Abarca filed a grievance with the union, contesting his termination. The grievance committee determined there was insufficient evidence supporting Kizzine's charge that Abarca had been sleeping on the job. The committee's determination was based in part on the fact that there were no witnesses to corroborate Kizzine's claim that Abarca was sleeping — evidence that the committee had required in previous cases of employees accused of sleeping while on duty. The grievance committee recommended that Abarca be reinstated to his position with Metro, with full back pay, seniority, and benefits.

As part of Abarca's return to work, Metro required him to sign a reinstatement agreement relating to the grievance, which was presented to him when he returned to work on September 3, 2002. The reinstatement agreement provided that:

---

[2] A memorandum prepared by Metro in January 2000, and posted at all Metro facilities, set forth, among other things, the policy that sleeping on the job was punishable by discharge.

> The parties, Transport Workers Union - Local 260, AFL-CIO, and the Metropolitan Transit Authority, hereby agree that Grievant, Antonio Abarca, shall be reinstated with full seniority and benefits, and back-pay for the period July 23-August 10, 2002, conditional upon him passing a return to work physical and drug/alcohol screens.
>
> This agreement is made on a non-prejudice, non-precedent basis, and shall constitute the entire settlement of this grievance. This grievance is hereby resolved.

Abarca did not sign the agreement, however, because he was purportedly uncomfortable with certain terms of the agreement, including his concern as to how his vacation time was being calculated. Although the agreement was signed by Metro's Senior Director of Labor Relations, Yvonne Ogden, and a union representative, Abarca maintained he was not bound by the terms as negotiated between Ogden and the union. Thereafter, on September 5, 2002, Metro notified Abarca by letter that Metro was rescinding its offer of reinstatement because of Abarca's failure to sign the reinstatement agreement.

Abarca filed suit in state court, asserting breach of contract claims, violations of 28 U.S.C. § 1983, and violations of Title VII for discrimination and retaliation based on national origin. After successfully removing the case to federal court based on the existence of a federal question, Metro also successfully sought dismissal of Abarca's breach of contract and § 1983 claims. Then, in February 2004, Metro filed a motion for summary judgment, seeking the dismissal of Abarca's Title VII claims. On March 31, 2004, the district court granted Metro's motion and entered a final

4

take-nothing judgment against Abarca.  Abarca timely filed the instant appeal.

## STANDARD OF REVIEW

This Court reviews grants of summary judgment de novo, applying the same standard as the district court. Tango Transp. v. Healthcare Fin. Servs. LLC, 322 F.3d 888, 890 (5th Cir. 2003) (citation omitted).  Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  The Court views the evidence in the light most favorable to the non-movant. Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997). The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex, 477 U.S. at 322-23.

## DISCUSSION

On appeal, Abarca maintains the district court erred in granting summary judgment because there is evidence he

5

was treated differently from similarly situated individuals when Metro required him to sign the reinstatement agreement as a condition of returning to work. Abarca's argument focuses on two points. First, he cites to deposition testimony from a Metro administrator revealing that, in practice, Metro did not always require reinstated employees to sign such agreements. Second, Abarca contends he was given only 36 hours to sign the reinstatement agreement, which he nevertheless claims was an agreement between Metro and the union, rather than between Metro and Abarca.

In its Memorandum Opinion, the district court found that Abarca had not established a prima facie case for employment discrimination based on race or national origin because he could not show that he was required to do some act, i.e., sign a reinstatement agreement, that others similarly situated were not required to do. We subject Abarca's discrimination claim to the burden shifting framework enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, Abarca must first establish a prima facie case of discrimination. See Frank v. Xerox Corp., 347 F.3d 130, 137 (5th Cir. 2003). If successful, the burden then shifts to Metro to proffer a legitimate, non-discriminatory reason for requiring Abarca to sign the reinstatement agreement. See id. If Metro satisfies its burden, the burden is then shifted back to Abarca to demonstrate that

6

Metro's legitimate, non-discriminatory reason was simply a pretext of discrimination.  See id.

In order to establish a prima facie case of discrimination on the basis of race or national origin, a plaintiff must show he or she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated.  Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001).

The focus of our inquiry is whether Abarca has satisfied the fourth prong of this test.  Metro presented evidence that while not all reinstated employees are required to sign reinstatement agreements, such agreements were required in approximately one-half of the reinstatements negotiated between Metro and the union. There is also undisputed deposition testimony from the union president who stated that there was nothing out of the ordinary with respect to the terms of Abarca's particular reinstatement agreement.  And, importantly, Abarca failed to identify any employee with whom he was similarly situated, but who was treated more favorably.

As to Abarca's argument regarding the 36-hour deadline for signing the agreement, there is evidence in the record that the union, as the exclusive representative of all bargaining members at Metro (including Abarca), was responsible for obtaining the signature of the member in addition to the signatures provided by Metro and the union representative.  Moreover, Ogden revealed in

7

her deposition testimony that she was willing to give Abarca a few extra days after the September 3 deadline during which he could review and sign the reinstatement agreement – an accommodation that Abarca did not take advantage of and one that this Court deems adequate to afford Abarca the opportunity to address any problems he may have had with the terms of the agreement.

In sum, Abarca has not come forward with sufficient evidence establishing that Metro discriminated against him by requiring him to sign the reinstatement agreement.  As such, the district court properly determined that Metro did not discriminate against Abarca when it required him to sign the reinstatement agreement as a condition of his return to work.

### CONCLUSION

Having carefully reviewed the entire record of this case and having fully considered the parties' respective briefing and arguments, we find no reversible error in the district court's granting of summary judgment in favor of Metro.

**AFFIRMED.**

8