United States Court of Appeals
Fifth Circuit

**F I L E D**

June 22, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————

No. 05-20382
Summary Calendar

————————————

TITUS BOUIE, individually, and as class representative of all
similarly situated persons,

Plaintiff - Appellant,

versus

EQUISTAR CHEMICALS LP,

Defendant - Appellee.

————————————————————

Appeal from the United States District Court
for the Southern District of Texas
(4:02-CV-3070)

————————————————————

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Titus Bouie, a black male, brought a Title VII claim against his prior employer,

Equistar, alleging discriminatory and retaliatory discharge. Bouie appeals from the district

court's grant of summary judgment in favor of the employer. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

## I. FACTS AND PROCEEDINGS

Equistar runs a chemical processing plant where Bouie worked as an operator. Bouie had worked at the plant since 1977, first for Equistar's predecessor and then for Equistar beginning in January 1998 when Equistar purchased the plant. Bouie worked until June 29, 2001. On June 23, 2001, certain maintenance work was performed on an acid pipeline. Bouie was responsible for issuing the necessary permits and overseeing various safety protocols in connection with the repairs. Specifically, it was Bouie's job to issue a Hot Work Permit for the burning and welding that was eventually performed on the active acid line. It was also Bouie's job to ensure that certain valves in the line were properly locked and tagged, preventing the inadvertent flow of acid through the line while work was being performed, in accordance with the company's Lock Out/Tag Out ("LOTO") procedure. Bouie did not properly complete the LOTO procedure,[1] and instead of issuing a Hot Work Permit, he issued a Limited Hot Work Permit. When the repairs did not proceed smoothly, Bouie's supervisor intervened and, after noticing that the LOTO procedure had not been followed, relieved Bouie of his duties for the remainder of the day.

Equistar conducted an investigation of the incident. Bouie was interviewed by various supervisors. They asked him what he would do differently, and he responded that

---

[1]The parties dispute the extent of Bouie's noncompliance with the LOTO procedure. Bouie concedes that he did not properly complete the paperwork but maintains, despite some record evidence to the contrary, that this was the only error. Notably, in his interview, Bouie acknowledged that LOTO was not properly completed, and, in a letter to Equistar requesting the reinstatement of Bouie's position, Bouie's attorney acknowledged that Bouie "made a mistake." Without resolving the extent of Bouie's noncompliance with the LOTO procedure, we note that Bouie concedes that he did err in some respect.

he would "do LOTO properly." Bouie stated that he was not avoiding safety procedures, but was rushed to complete the job. Bouie acknowledged that one of his primary job functions was to ensure safety and that the purpose of the LOTO procedure was safety as well. Equistar also interviewed maintenance personnel and one of Bouie's supervisors. Following the interviews, Equistar concluded that, in addition to Bouie's failure to follow the LOTO procedure, he had also improperly issued a Limited Hot Work Permit. On June 29, 2001, Equistar terminated Bouie's employment.

Bouie filed suit in state court, seeking damages for, *inter alia*, racial discrimination and retaliatory discharge pursuant to both Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act, TEX. LABOR CODE ANN. § 21.051. Equistar timely removed to federal district court on grounds of federal question jurisdiction. Bouie then filed a motion for leave to amend his original petition, stating that he wanted to drop the federal claims and that he wanted the court to remand the case back to state court. The district court denied Bouie's motions. Equistar moved for summary judgment, and the district court granted the motion. Bouie timely appealed. He argues that (1) summary judgment was improper, and (2) the district court abused its discretion in not permitting him to amend his complaint.

## II. DISCUSSION

### A. Discrimination Claim

Bouie argues that the district court improperly granted summary judgment on his discriminatory and retaliatory discharge claims. This court reviews the district court's

3

grant of summary judgment de novo. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (internal quotations and citation omitted). In making this determination, this court reviews the facts in the light most favorable to the nonmoving party. *Tarver v. City of Edna*, 410 F.3d 745, 749 (5th Cir. 2005). If the moving party meets its burden in showing an absence of genuine issue of material fact, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

## (1) Discriminatory Discharge

Title VII prohibits an employer from discharging an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In a Title VII claim, the case proceeds according to the burden shifting regime articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the burden shifting analysis, the plaintiff must first establish a prima facie case of discrimination. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). Once established, the prima facie case raises a presumption of discrimination, which the defendant must then rebut by demonstrating a legitimate, nondiscriminatory reason for its actions. *Okoye*, 245 F.3d at 512. If the defendant satisfies this burden, then the

4

presumption disappears, and the plaintiff must show that the defendant's reasons are a pretext for discrimination. *Id.* For cases where the mixed-motives analysis may apply, this court recently modified the third stage of the *McDonnell Douglas* approach. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (modifying the final stage of the *McDonnell Douglas* scheme to accommodate *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). *See also Keelan v. Jamesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).

We need not navigate this burden-shifting regime, since we agree with the district court that Bouie has not established a prima facie case of discrimination. Under Title VII, a plaintiff makes a prima facie case for racial discrimination by proving (1) that he is a member of a protected class, (2) that he was qualified for the position, (3) that he suffered adverse employment action, and (4) that, in the case of disparate treatment, others similarly situated were treated more favorably. *Abarca*, 404 F.3d at 941; *Okoye*, 245 F.3d at 512–13 (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).

The parties contest whether Bouie has set forth competent summary judgment evidence on the fourth prong. Bouie argues that the evidence he presented shows disparate treatment of similarly situated employees. He offered the following evidence: (1) ten white employees were not terminated for violating the LOTO procedure; (2) seven white employees were not terminated for violations of Equistar procedures that were, according to Bouie, equal to or more serious than Bouie's violations; (3) a black employee was terminated after sleeping on the job but a white employee was not terminated for the same infraction; (4) demographic data of the racial make-up of Equistar's A Operators and

5

B Operators shows that more whites hold the A Operator position, which is higher ranking and higher paid than B Operator position.

To satisfy the fourth prong, Bouie must show that others similarly situated were treated more favorably under circumstances "nearly identical" to his. *Okoye*, 245 F.3d at 514; *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000) (citing *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). We have held that, in order for circumstances to be nearly identical, the misconduct itself must be nearly identical. *Perez v. Tex. Dept. of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004) (discussing cases which held that different misconduct does not constitute a nearly identical situation). *See also Bryant v. Compass Group USA, Inc.*, 413 F.3d 471 (5th Cir. 2005); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990). The evidence Bouie presents does not satisfy this burden. Bouie was terminated for failing to comply with the LOTO procedure and for failing to issue a Hot Work Permit.[2] Because Bouie was discharged for failure to comply with two safety protocols, his situation is not nearly identical to that of the white

---

[2]On appeal, Bouie maintains that he was terminated only for failing to comply with the LOTO procedure, but he has not raised a genuine issue on this point. First, the record shows that Bouie did not know the proper situation in which to issue a Hot Work Permit. In his deposition, Bouie testified that a Limited Hot Work Permit was proper for burning and welding, but as Equistar asserts, by citing to the company policy manual, burning and welding in process areas requires a Hot Work Permit. Consequently, the notes from the investigation following the incident affirm that Bouie improperly issued a Limited Hot Work Permit. Second, Bouie was told the reason he was terminated. Equistar's notes from the telephone conversation discharging Bouie state that Bouie was told he was terminated for violations of LOTO and the Safe Work Permit Process. At his deposition, Bouie was asked to review the notes and answer whether the notes accurately reflected the conversation. Bouie stated that the notes were correct.

employees who were not fired for failure to comply with only one safety protocol.

Bouie's other evidence fails for the same reason. Bouie acknowledges that the white employees who were not discharged for violations of protocols allegedly more serious than his were not engaged in misconduct nearly identical to his. Also, Bouie was not discharged for sleeping on the job; therefore, the termination decisions for the two men Bouie discusses is not applicable to Bouie's prima facie case. Finally, the demographic data does not speak to whether other similarly situated employees were treated more favorably than Bouie and appears to be related to a failure-to-promote claim which he alleged in his initial complaint but did not pursue because it was time-barred. Unable to demonstrate that others similarly situated were treated more favorably, Bouie has not established a prima facie case.

(2) Retaliatory Discharge

Title VII prohibits retaliation by employers against employees who have previously filed a charge of discrimination. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Bouie must prove that: (1) he engaged in an activity that Title VII protects, (2) Equistar carried out an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005) (citing *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir. 1999)). Bouie does not show that a causal connection exists between his discharge and protected activity. The protected activity in which Bouie engaged was complaining to management about alleged racial discrimination

7

in the mid- to late-1990s. These complaints were two to five years before the June 29, 2001 discharge. As a result of this time lapse alone, it is unlikely that a causal connection exists. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken (as here) [twenty] months later suggests, by itself, no causality at all."); *Grizzle v. Traveler's Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (stating that a ten month time lapse in the context of the case did not suggest a retaliatory motive).

In addition to the time lapse, Bouie does not show that the individuals to whom he complained were the same ones that made his termination decision. We have held that, where an employer is unaware of the protected conduct at the time of the discharge, the employer could not have retaliated against the employee based on the conduct. *See Chaney*, 179 F.3d at 168. Because of the time lapse, and because Bouie has not drawn a connection between the complaints he made in the 1990s and the decision-makers involved in his termination decision in 2001, he can not establish a prima facie case of retaliation.

## C. Bouie's Motion for Leave to Amend

Before the district court, Bouie requested leave to amend his complaint in order to retract his federal claims. The district court denied the request. On appeal, Bouie contends that the district court should have granted him leave to amend his complaint.[3] We review a district's decision to deny a request to amend a complaint for abuse of discretion. *See*

_____

[3]Bouie also suggests that the district court erred in retaining supplemental jurisdiction over his state law claims. He argues that, once he moved to amend his complaint and delete his federal claims, the state law claims predominated, and there was no reason for the district court to retain supplemental jurisdiction. Bouie's argument is nonsensical; the district court did not grant his motion for leave to amend the complaint.

8

*Fin. Acquisition Partners v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006).

In deciding whether to grant leave to amend, a district court considers such factors as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir.1993). The district court found bad faith on the part of Bouie for forum shopping, noting that Bouie's intention was to defeat federal jurisdiction. The district court also acknowledged that the amendment would be futile because a court looks at the claims in the state court petition as they existed at the time of removal when determining whether federal jurisdiction is present for purposes of removal. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). The district court properly found both bad faith and futility and, therefore, did not abuse its discretion in denying Bouie's motion for leave to amend.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.