United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 1, 2006**

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
## for the Fifth Circuit

―――――――――

m 05-51770
Summary Calendar

―――――――――

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff-Appellant,

AND

TERRANCE DAREELL JOHNSON,

Intervenor Plaintiff-Appellant,

VERSUS

NEXION HEALTH AT BROADWAY, INC.,
DOING BUSINESS AS BROADWAY LODGE,

Intervenor Defendant-Appellee.

―――――――――――

Appeal from the United States District Court
for the Western District of Texas
m 5:04-CV-872

―――――――――――

Before SMITH, WIENER, and OWEN,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

The Equal Employment Opportunity Commission ("EEOC") appeals the dismissal on summary judgment of its claim that Terrence Johnson,[1] a former employee of Nexion Health at Broadway, Inc. ("Nexion"), was subjected to a racially hostile work environment in violation of title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. We affirm.

I.

Nexion operates a nursing home in San Antonio, Texas, that cares primarily for elderly persons with mental conditions such as dementia, schizophrenia, and Alzheimer's disease. Nexion employed Johnson as a certified nurse's assistant caring for the residents' daily needs. Seventy-year-old Pete Patino, one of the residents Johnson cared for, began directing vehement racial slurs against Johnson, who is black, in early 2003. Patino, who is Hispanic, also made many disparaging racial remarks about whites and Hispanics during the same time period. He is a schizophrenic and has had a history of mental illness since age thirteen.

Patino continued to make offensive racial comments against Johnson, including frequent use of the word "nigger," approximately three to four times a week over the next few months. Johnson reported this verbal abuse to his superiors on many occasions, but they took no action. Patino alleged that Johnson threatened him physically. Nexion fired Johnson for the alleged abuse and for lying during an internal investigation into the abuse allegations.

The EEOC sued Nexion, and Johnson intervened as a plaintiff. The suit alleged that Nexion forced Johnson to work in a racially hostile work environment in violation of 42 U.S.C. § 2000e et seq. The district court granted summary judgment to Nexion and dismissed the case. This appeal follows.

II.
A.

We review a summary judgment de novo, applying the same standard as did the district court. Terrebonne Parish Sch. Bd. v. Mobil Oil Corp., 310 F.3d 870, 877 (5th Cir. 2002). Summary judgment is proper if the materials before the court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c).

B.

To prevail on a title VII hostile work environment claim,[2] a plaintiff must prove that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment of which he complained was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. Frank v. Xerox Corp., 347

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

[1] Johnson intervened in this appeal and has adopted the EEOC's briefs in their entirety.

[2] Hostile work environment claims based on racial discrimination are reviewed under the same standard as are those based on sexual discrimination. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 n.10 (2002).

F.3d 130, 138 (5th Cir. 2003). Johnson's claim satisfies the first three requirements because he is black and was subjected to unwelcome harassment from Patino on that basis.

### C.

We must determine whether the racial slurs directed against Johnson by Patino qualify as actionable harassment under the fourth part of the test. For harassment to affect a term, condition, or privilege of employment, it must be subjectively and objectively abusive. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). The harassment Johnson suffered was subjectively abusive to him, so we turn to whether that harassment was also objectively abusive.[3]

Whether an environment is objectively hostile or abusive is determined by considering the totality of the circumstances. *Harris*, 510 U.S. at 23. Although no single factor is required, courts look to the frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating as opposed to a mere offensive utterance, whether it unreasonably interferes with an employee's work performance, and whether the complained-of conduct undermines the plaintiff's workplace competence. *Hockman*, 407 F.3d at 325-26.

---

[3] Whether Nexion responded appropriately to Johnson's complaints is immaterial unless the harassment Johnson absorbed from Patino is legally actionable. Because Patino's comments did not affect a term, condition, or privilege of Johnson's employment, we do not consider Nexion's response to the situation. The fact that Johnson was fired after Patino raised an allegation of abuse against him is likewise irrelevant to whether, as a legal matter, Patino's comments created a hostile workplace environment for Johnson.

The district court relied primarily on *Cain v. Blackwell*, 246 F.3d 758, 760-61 (5th Cir. 2001). There, Cain, who provided home health services to the elderly, sued her employer, alleging a hostile work environment created by sexual advances and racial slurs from a patient who suffered from Parkinson's and Alzheimer's. We held that, given the unique circumstances of Cain's employment, the abuse she suffered was insufficient to establish actionable harassment under title VII. We explained:

> The home health care industry was created to assist individuals who lack the ability to care for themselves. Many of these individuals become dependent on home health care as a direct result of debilitating diseases such as Alzheimer's and Parkinson's. As an Advanced employee, Cain's daily routine included dealing with the victims of those diseases and their particular failings. In this context, Marcus's improper requests and tasteless remarks can not form the basis of a justiciable claim for sexual harassment.

*Id.* at 760.

*Cain* does not establish a bright-line rule that employees who care for disabled, elderly patients can never succeed on a title VII claim. The specific circumstances of each harassment claim must be judged to determine whether a reasonable person would find the work environment hostile or abusive. The EEOC correctly points to factual distinctions between *Cain* and the case before us now. Resolution of Johnson's case requires an individualized inquiry into the circumstances of the harassment, and it would therefore be error to rely on *Cain* alone in deciding this case. That said, we find the *Cain* court's discussion of the unique circumstances involved in caring for mentally diseased elderly patients to be partic-

3

ularly persuasive, and our reasoning in *Cain* guides our decision here.

We look now to the factors that are often used in determining whether a workplace environment is objectively hostile or abusive. As to the severity of the conduct, Patino's comments were highly discriminatory. As to their frequency, Johnson allegedly heard the comments about three to four times a week over a number of months.

Although these were more than isolated instances of harassment, they were not so frequent as to pervade the work experience of a reasonable nursing home employee, especially considering their source. Patino's harassment was not physically threatening or humiliating; it consisted only of offensive utterances, although those utterances were quite offensive.

These circumstances alone cannot support a hostile work environment claim absent some objectively detrimental impact on Johnson's work performance. The EEOC's claim fails, because the harassment Johnson suffered did not objectively interfere with his work performance or undermine his workplace competence. Johnson's job required him to deal with the tragic failings of elderly people whose minds have essentially failed. Absorbing occasional verbal abuse from such patients was not merely an inconvenience associated with his job; it was an important part of the job itself.

This unique aspect of Johnson's line of employment is a vital consideration. He worked in a place where most of the people around him were often unable to control what they said or did. It is objectively unreasonable for an employee in such a workplace to perceive a racially hostile work environment based solely on statements made by those who are mentally impaired.

Because Johnson's work environment was not objectively hostile or abusive given the totality of the circumstances, it cannot be said that Patino's comments affected a condition, term, or privilege of Johnson's employment. Therefore, no rational trier of fact could have held Nexion liable for providing Johnson with a hostile work environment. The summary judgment is AFFIRMED.

4