IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

F I L E D

June 19, 2008

Charles R. Fulbruge III
Clerk

No. 07-60850
Summary Calendar

ERIC DILWORTH

Plaintiff - Appellant

V.

CONTINENTAL CONSTRUCTION COMPANY INC

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:05-CV-338

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Eric Dilworth brought suit against his former employer, Continental Construction Company, Inc. ("Continental"), alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The case was tried to a jury, which returned a verdict in favor of Continental. The district court entered a take-nothing judgment against Dilworth, who now appeals. For the reasons that follow, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Background

Continental hired Dilworth in June 2005 as a general laborer at a construction site in Iuka, Mississippi. Dilworth, who was one of about a dozen general laborers at the Iuka site, assisted the skilled workers (such as carpenters and ironworkers) and performed various other tasks as needed. On the Friday of Dilworth's first week on the job, he was called into the superintendent's office and fired.

The reasons for the firing were disputed. Continental averred that it was the company's practice to watch a new hire for the first few days to ensure that he was competent, and that in accordance with this practice, Continental's foreman and superintendent at the Iuka site observed Dilworth during the course of his first week on the job and came to the conclusion that his work ethic was not adequate and that he was failing to perform his duties. For example, Continental claimed that on several occasions, Dilworth was supposed to be fine grading an area to allow for the carpenters to build forms for pouring a concrete slab, but stood around watching and not working, which required the carpenters to perform the task themselves.[1]

Dilworth, on the other hand, claimed that the firing was motivated by his race (Dilworth is black). According to Dilworth, he was one of the laborers who actually was working during the periods in question, while several other white laborers were standing around and not working, and yet Dilworth was the only one who was fired.

A few weeks after he was fired, Dilworth filed a charge of discrimination against Continental with the Equal Employment Opportunity Commission ("EEOC"), claiming that Continental had discriminated against him on the basis of his race. The EEOC dismissed Dilworth's charge and issued him a right-to-

---

[1] Fine grading is generally laborer's work, not carpenter's. At the Iuka site it involved spreading and leveling gravel so that a concrete slab of uniform thickness could be poured.

sue letter. Dilworth subsequently filed suit against Continental in the United States District Court for the Northern District of Mississippi. In his complaint, Dilworth alleged that he was fired because of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981. Continental moved for summary judgment, but its motion was denied by the district court, which found that a genuine issue of material fact existed concerning Continental's reasons for firing Dilworth. The case was then tried to a jury on June 4–5, 2007. During the trial, conflicting evidence was presented regarding the circumstances surrounding, and the reasons for, Dilworth's firing. The jury ultimately returned a verdict in favor of Continental, and the district court entered a take-nothing judgment against Dilworth. A timely notice of appeal was filed by Dilworth.

## II. Discussion

Claims of racial discrimination brought under Title VII or § 1981 are considered "under the same rubric of analysis." Raggs v. Miss. Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002) (citations omitted). Under the familiar McDonnell Douglas burden-shifting framework, the plaintiff must first establish a prima facie case of discrimination by demonstrating that he was: "(1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005) (citing Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001)). The burden then shifts to the defendant to proffer a legitimate, non-discriminatory reason for the action. Id. (citing Frank v. Xerox Corp., 347 F.3d 130, 137 (5th Cir. 2003)). If the defendant satisfies its burden, the burden shifts back to the plaintiff to show that the proffered reason or reasons are pretextual. Id. (citing Frank, 347 F.3d at 137). "Although the evidentiary burdens shift between the parties in this framework, '[t]he ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains a[t] all times with the plaintiff.'" Raggs, 278 F.3d at 468 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). Finally, when a full trial on the merits has been conducted, as is the case here, our focus is not on the plaintiff's prima facie case or the McDonnell Douglas framework, but on the ultimate question whether the record contains sufficient evidence to support the jury's finding of race discrimination or no race discrimination. See id.

Continental first argues that Dilworth, in his appellate brief, has not presented a clear statement of the issues or alleged any error committed by the district court, and that his appeal should therefore be dismissed for failure to comply with Fifth Circuit Rule 28. We disagree. Dilworth, though represented by counsel in the district court, is proceeding pro se on appeal. "Briefs by pro se litigants are afforded liberal construction, though even pro se litigants must brief arguments to preserve them." Johnson v. Quarterman, 479 F.3d 358, 359 (5th Cir. 2007) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972); Yohey v. Collings, 985 F.2d 222, 224–25 (5th Cir. 1993)). While Dilworth's brief is perhaps not as clear as it could be, we understand it to advance a challenge to the sufficiency of the evidence supporting the jury's verdict against him. Specifically, the "Summary of the Argument" section of Dilworth's brief discusses issues relating to the evidence at trial of Dilworth's performance of his work duties vis-à-vis the performance of other laborers, as well as the testimony of a Continental employee who described the circumstances of Dilworth's employment and firing. These issues are relevant to an issue of material fact that was identified by the district court in its denial of Continental's summary judgment motion and that was a disputed issue at trial—whether Continental's reason for firing Dilworth was merely a pretext for racial discrimination.

We will therefore proceed to the merits of Dilworth's appeal. Before we do so, though, we must determine the proper standard of review. "Challenges to

the sufficiency of the evidence must be raised in a [Federal Rule of Civil Procedure 50(a)] motion for judgment as a matter of law before submission of the case to the jury." United States for the Use of Wallace v. Flintco Inc., 143 F.3d 955, 960 (5th Cir. 1998). Continental asserts that Dilworth failed to file such a motion at trial on the issue of the sufficiency of the evidence, and that, having failed to preserve this issue for appeal, the appropriate standard of review is plain error. We have reviewed the record and confirmed that Dilworth indeed failed to move for judgment as a matter of law on the issue of the sufficiency of the evidence before the case was submitted to the jury. We must therefore consider Dilworth's current challenge to the sufficiency of the evidence under the plain error standard, where reversal is proper "only if the judgment complained of results in a 'manifest miscarriage of justice.'" Id. at 963–64 (quoting McCann v. Tex. City Refining, Inc., 984 F.2d 667, 673 (5th Cir. 1993)). "On plain error review 'the question before this Court is not whether there was substantial evidence to support the jury verdict, but whether there was any evidence to support the jury verdict.'" Id. at 964 (quoting McCann, 984 F.2d at 673) (emphasis in original). "If any evidence supports the jury verdict, the verdict will be upheld." Id. (citing Polanco v. City of Austin, 78 F.3d 968, 974 (5th Cir. 1996)) (emphasis in original).

After hearing the evidence presented during the two days of trial, and then receiving an instruction from the district court regarding Dilworth's burden of proof, the jury determined that Continental had not discriminated against Dilworth on the basis of race. Our review of the record convinces us that there was evidence in support of this determination. The main issue in dispute at trial concerned whether Continental's proffered reason for firing Dilworth—that his work effort was not adequate and that he was failing to perform his job duties—was a pretext for race discrimination. Continental presented the testimony of the foreman and superintendent at the Iuka job site, who testified

to: (1) Continental's practice of observing new hires to determine if they are competent; (2) their own observations of Dilworth's performance of his job duties; (3) Dilworth's job performance compared to the performance of other laborers; and (4) the reasons for the decision to fire Dilworth. For example, superintendent Wayne Ross explained Continental's practice of observing and evaluating new hires and related his own observations of Dilworth:

> Ross: Well, when [job applicants] come in, we just ask them, you know, if they've been in construction work before. And if they have, we ask them what they did, how long they were in it. That's pretty much it. We don't take an application or anything like that. . . .
>
> Counsel: But you give them a shot to see if they can do what they're telling you they can do?
>
> Ross: Yes, ma'am.
>
> Counsel: And after you give them this opportunity to work, what do you do?
>
> Ross: Well, we observe them. * * * The next couple of days [after the applicant is hired] is when you really start, you know, taking a look at them to see. Because in this period of time, they're adjusting. They're beginning to fall in with the rest of the people and get the work done.
>
> Counsel: And what did you notice about Mr. Dilworth during those next couple of days?
>
> Ross: Well, the second day . . . . I noticed that he was -- he just didn't seem like he had a lot of enthusiasm. He didn't really seem like he was getting into the work with the experience that he said he had.
> And the third day, I -- in my rounds, I noticed that he was just standing looking while the other people were working . . . .
> * * *
>
> Counsel: Was he getting the job done?
>
> Ross: Well, he was working with the rest of them, but he wasn't doing what they were doing.

6

Counsel:    Was he pulling his share of the weight on the crew?

Ross:    No, ma'am.

Similarly, foreman Thomas Sullivan testified as follows:

Sullivan:    Well, the first couple of days, you know, I noticed he was working; but he wasn't working real good.

Counsel:    What do you mean by that?

Sullivan:    He didn't show a lot of interest in his work. * * * He was going through the motions; but he really wasn't, you know, putting his heart into his work.

The testimony of Ross and Sullivan, which offers a legitimate, non-discriminatory reason for Dilworth's firing, provides an evidentiary basis for the jury's determination that Continental did not discriminate against Dilworth. Therefore, under the plain error standard, we must affirm the district's court judgment entered in accordance with the jury's verdict.

## III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED. All pending motions are DENIED.